UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Craig Hildebrandt and Stacy Hildebrandt, <br><br> Debtors. <br>———————————————————<br> Chicago Materials Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Craig Hildebrandt, <br><br> Debtor - Defendant. | Bankruptcy No. 08-B-06162 <br> Adversary No. 08-A-00336 <br> Chapter 7 <br> Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on the Amended Adversary Complaint of Chicago Materials Corporation ("CMC") against the Debtor-Defendant, Craig Hildebrandt. For the reasons set forth herein, the Court will enter judgment in favor of the Defendant on Counts V and VII. The remaining counts are dismissed as moot or for want of subject matter jurisdiction.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide Counts IV and V (Constructive Trust) and VII (11 U.S.C. §523(a)(2)(A) and §523(a)(4)) pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Such counts are core proceedings pursuant to 28 U.S.C. §157(b)(2)(B), (I), (K) and (O). Except to the

extent necessary to determine Counts IV, V and VII, the remaining counts are non-core. As discussed in more detail below, since the Plaintiff has identified no non-dischargeable debt and has identified no remaining asset of the bankruptcy estate, the Court has no jurisdiction to decide Counts I-III or VI.

## II. FACTUAL BACKGROUND

Much of the factual background for this case and discussion of the legal standards was already set forth in this Court's August 20, 2009 Memorandum Opinion and will not be repeated here. That opinion was issued in connection with Mr. Hildebrandt's motion to dismiss the Amended Complaint, and for the reasons set forth therein, the Court dismissed Count II of the Amended Complaint and denied the motion with respect to all other counts. A trial was subsequently held on March 10, 2011, and August 23, 2011, on the counts that were not previously dismissed.

All counts relate primarily to the delivery of a lien waiver on February 7, 2006. At that time, Mr. Hildebrandt was Vice President of Hildebrandt Paving, Ltd. ("HP"), and HP was a subcontractor providing paving services on a construction project at a high school in Plainfield, Illinois. The Frederick Quinn Corporation ("Quinn") was the general contractor on the project, and the Plaintiff, Chicago Materials Corporation ("CMC"), provided materials to HP that HP used on the project. As of February 7, 2006, HP had paid CMC some of the amounts owing for materials HP had purchased from CMC, but still owed CMC at least $146,873.[1] Although on February 7, 2006, CMC was still

---

[1] Ann Doyle, a collection specialist for CMC at the relevant time, testified that as of February 7, 2006, HP owed Chicago Materials $146,873 "for the first phase of the high school job." (Trial Tr. 85:16-23, Aug. 23, 2011). In their post-trial brief, CMC attempted to argue that HP owed CMC an additional $65,099.48 for the second phase of the job, but they provided no evidence of that fact at trial. However, as discussed below in more detail, even if the unsupported allegation were true, it would not affect the Court's ruling.

owed such amount, HP submitted to Quinn a "Contractor's Affidavit" signed by Mr. Hildebrandt stating that CMC had been paid $302,714.78 of the full $311,177.38 contract price and was only owed $8,462.59, together with a "Final Waiver of Lien" signed by a representative of CMC stating that CMC had been paid in full $311,177.38. The Contractor's Affidavit indicated that HP was requesting payment of $28,183.00 for itself, $4,404.41 for a stone provider named Boughton, and $8,462.59 for CMC, totaling $41,050.00. (Pl.'s Ex. 10).

When CMC was first asked by HP to sign the final lien waiver, CMC had initially refused unless language was added stating that the waiver was "conditional upon receipt of payment." CMC alleges that it agreed to sign the unconditional waiver only after HP informed it that Quinn would not accept a conditional waiver. Even then, CMC alleges that it informed HP that it would only sign an unconditional waiver if HP would sign a separate statement prepared by CMC. Thus, at CMC's request Mr. Hildebrandt signed a separate statement, which was not provided to Quinn, stating that, "In reference to the Final Waiver given by Chicago Materials Corporation in the amount of $311,177.38 ... the Final Waiver given to Hildebrandt Paving Company by Chicago Materials Corporation is conditional upon receipt of payment." (Pl.'s Ex. 8). After Mr. Hildebrandt signed this separate statement, CMC signed the unconditional waiver. HP delivered the unconditional waiver and contractor's affidavit to Quinn and Quinn gave HP a check for $41,050.00, which was deposited into HP's account at State Financial Bank on February 7, 2006. (Stipulations, Sept. 22, 2011, ECF No. 142). No testimony or evidence was presented as to what happened to the $41,050 proceeds of the check thereafter, except that none of it was ever paid to CMC.

## III. DISCUSSION

CMC alleges that HP still owes CMC $42,472.38[2] and argues that, because Mr. Hildebrandt deprived CMC of the $41,050 payment from Quinn that would have otherwise reduced that liability, Mr. Hildebrandt directly owes a non-dischargeable debt of $41,050 to CMC. CMC argues that Mr. Hildebrandt defrauded CMC out of funds to which it would have been entitled, either by presenting the false lien waiver and contractor's affidavit to Quinn or by tricking CMC into signing the lien waiver. See 11 U.S.C. § 523(a)(2)(A) (precluding a debtor from receiving a discharge from any debt obtained by "false pretenses, a false representation, or actual fraud"). In the alternative, CMC argues that state law made Mr. Hildebrandt a trustee in the funds paid by Quinn in reliance on the lien waiver, and that Mr. Hildebrandt committed fraud or defalcation when he failed to remit the funds to CMC. See 11 U.S.C. §523(a)(4) (precluding a debtor from receiving a discharge from any debt "for fraud or defalcation while acting in a fiduciary capacity"). Neither argument is supported by law or by the evidence presented at trial.

### A.   False Pretenses, False Representation or Actual Fraud (Section 523(a)(2)(A))

### 1.   The Lien Waiver By Itself Does Not Support CMC's 523(a)(2)(A) Claim

To protect itself from paying twice for the same work, the owner of a construction project

---

[2] Mr. Hildebrandt disputes this allegation and argues that the evidence presented at trial did not demonstrate such liability. Testimony was presented that sometime after February 2006 Mr. Hildebrandt individually made payments of about $80,000 to CMC, and CMC received a settlement payment of $89,500 on a claim CMC brought against Quinn. However, as discussed below, because the Court finds that even if any amount were still owing by HP to CMC such determination would not support a nondischargeable claim against Mr. Hildebrandt, the Court need not determine the precise amount owing by HP to CMC.

will generally "demand from the contractor, prior to payment, a sworn statement listing all subcontractors providing labor and materials to the contractor." Lazar Bros. Trucking, Inc. v. A & B Excavating, Inc., 365 Ill. App. 3d 559, 563, 850 N.E.2d 215, 219 (Ill. App. Ct. 2006). To further protect itself from any such subcontractors asserting mechanics liens against the property, the owner will also generally require lien waivers signed by all subcontractors. Such lien waivers would generally provide a defense to any mechanics liens such parties might claim. Id. (lien waivers established a *prima facie* defense to claim for a mechanics lien).[3]

This Court has previously held that where a subcontractor on a construction project submits a false lien waiver to the general contractor in order to obtain a progress payment, falsely stating that all providers of material have been paid, the misrepresentation can support an action brought by the general contractor to find the debt for the amount advanced non-dischargeable under Section 523(a)(2). See Hardin Paving Co. v. Jackowiak (In re Jackowiak), No. 09-A-96013, 09-B-70190, 2009 WL 3930217 (Bankr. N.D. Ill. Nov. 18, 2009). In such an instance, the debtor has obtained money by a false representation upon which the payor justifiably relied. That is not the scenario here, however. The plaintiff in this case is not the one who *received* the false representation in the lien waiver or the one who extended funds. That would be Quinn, not CMC.

However, even if no false representation was made to CMC, Section 523(a)(2)(A) also makes non-dischargeable a claim for "actual fraud," which the 7th Circuit Court of Appeals has defined broadly as "any deceit, artifice, trick, or design involving direct and active operation of the mind,

---

[3]"When a contractor has waived its lien, that waiver bars its attempt to foreclose on the lien unless the contractor establishes that the defendant did not innocently rely on the lien waiver." Cordeck Sales, Inc. v. Constr. Sys., Inc., 394 Ill. App. 3d 870, 880, 917 N.E.2d 536, 545 (Ill. App. Ct. 2009).

used to circumvent and cheat another." McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000) (internal citation omitted). CMC argues that it was entitled to the $41,050 paid by Quinn and that Mr. Hildebrandt either tricked it out of getting that money or tricked it into giving up its right to assert a mechanics lien.

The problem with CMC's argument, however, is that even if the presentment of a false lien waiver to Quinn constituted a deceit or trick, CMC was not a party who was tricked. This was not a case of a debtor *forging* a lien waiver and submitting it to an owner without the subcontractor's knowledge. Instead, here, CMC admits that it signed the lien waiver, knowing it to be false, and knowing that it would be presented to Quinn. Thus CMC was not only aware of the deceit but was also a participant. Nor can CMC argue that it did not realize what it was signing or how it would be used. Instead, it admits that it initially objected to the form of the lien waiver for the very fact that it was not accurate and had asked for conditional language to be added, and therefore was clearly aware of the falsity. Therefore, the submission of the false lien waiver by itself cannot support a non-dischargeability action by CMC for actual fraud; either because CMC was not deceived by the alleged fraud or because CMC was a coparticipant in that fraud by signing the lien waiver knowing it to be inaccurate. See, e.g., Williams Elec. Games, Inc. v. Garrity, 366 F.3d 569, 574 (7th Cir. 2004) ("The defense of *in pari delicto* is intended for situations in which the victim is a participant in the misconduct giving rise to his claim, as in the classic case of the highwayman who sued his partner for an accounting of the profits of the robbery they had committed together.") (internal citations omitted).

## 2. CMC Failed to Prove That Mr. Hildebrandt Fraudulently Misrepresented the Amount that Would be Requested or Paid to CMC or that the Outstanding Debt Relates to any Such Misrepresentation

CMC's next argument is that, while it knew the lien waiver falsely stated that CMC had been paid in full and knew that the lien waiver would be presented to Quinn in connection with a request for payment, CMC did not know that HP would request less from Quinn than CMC was owed or that HP would fail to remit the proceeds to CMC.[4] There are two problems with this argument, however. First, CMC failed to prove that Mr. Hildebrandt made any representation to it about how much HP would request from Quinn. Second, in light of subsequent payments made by Mr. Hildebrandt to CMC, CMC failed to prove that any debt attributable to any such misrepresentation or fraud was still owing.

Ann Doyle, a former collection specialist at CMC, testified that HP owed CMC $146,873 as of the end of January 2006, and that she discussed this amount with Mr. Hildebrandt in several conversations around the time that HP requested lien waivers from CMC. (Trial Tr. 74:2-25, 75:1-21, Aug. 23, 2011 ). Ms. Doyle also testified that, had she known that HP would only submit

---

[4]CMC had also initially argued that Mr. Hildebrandt had falsely represented that Quinn would only accept an unconditional lien waiver, and that such misrepresentation supported its Section 523(a)(2)(A) claim. However, the evidence presented at trial made clear that any such representation was not false. Plaintiff's witness Scott Metzler, president of Quinn, testified not only that Quinn would have "required unconditional and valid lien waivers and an invoice" to support the payment request, but that unconditional waivers were a requirement both of the subcontract between Quinn and HP and of the contract between Quinn and the owner. (Trial Tr. 22:4-25, 23:1-12, Mar. 10, 2011). CMC appears to have dropped this argument, as it admits numerous times in its post-trial brief that Quinn would not have accepted a conditional lien waiver. See, e.g., Pl.'s Proposed Findings of Fact & Conclusions of Law ("Pl.'s Post-Trial Brief"), ¶¶ 6, 9, Oct. 20, 2011, ECF No. 148).

a payment request of $41,000 to Quinn, CMC would have never signed and provided an unconditional lien waiver to HP stating that CMC had been paid in full. (Trial Tr. 75:22-25, 76:1-25, 77:1-12, Aug. 23, 2011). Based on her testimony, CMC demonstrated that it *believed* at the time that HP would submit a payment request of at least $146,873, and that HP would pay CMC in full out of the proceeds of the payment from Quinn. However, no testimony was presented to demonstrate that Mr. Hildebrandt, or even anyone at HP, ever made a representation or promise to request such amount to anyone at CMC. Ms. Doyle simply testified that she discussed the amount owing, not the amount that would be requested from Quinn. Therefore, Ms. Doyle gave no testimony that Mr. Hildebrandt or anyone else made an express misrepresentation. Nor did she provide enough testimony about the contents of any conversation to establish that Mr. Hildebrandt made an implied representation or material omission. Even if such implied representation or omission had been established, CMC presented no testimony or evidence to demonstrate that Mr. Hildebrandt knew or should have known that Ms. Doyle or anyone at CMC was under the mistaken belief that HP would make a payment request for more than $41,000. See, e.g., Reeves v. Davis (In re Davis), 638 F.3d 549, 553 (7th Cir. 2011) (plaintiff must demonstrate (1) that debtor made false representation or omission "which he either knew was false or made with reckless disregard for the truth" and (2) that the debtor "possessed an intent to deceive or defraud"). Nor did Mr. Hildebrandt make any such representation in the separate statement he signed on behalf of HP. At most the separate statement simply clarified that, notwithstanding any language in the lien waiver to the contrary, Mr. Hildebrandt acknowledged that HP still owed CMC amounts for unpaid invoices. The separate statement made no reference to the amount of money HP would request from Quinn.

Additionally, even if CMC was able to prove that Mr. Hildebrandt made a false representation or committed fraud, it failed to demonstrate that the amount it seeks to find non-dischargeable relates to that fraud or misrepresentation. The lien waiver stated that the total amount due and paid from HP to CMC was $311,177.38. Evidence and testimony presented showed that HP had paid CMC $164,498.38 of this amount prior to the end of January 2006, leaving a balance of $146,679. CMC argues in its post-trial brief that the $311,177.38 amount referenced in the lien waiver and contractor's affidavit related only to materials for the 'first phase' of the project and that HP owed CMC an additional $65,293.90 for the 'second phase' of the project. However, even if that were true, CMC presented no theory by which Mr. Hildebrandt would have been individually liable for that additional amount on the 'second phase.' No allegation was made that Mr. Hildebrandt ever guaranteed the debts of HP or entered into any contract individually with CMC. As I noted in my August 20, 2009 opinion, under Illinois law corporate officers may be individually liable for the torts of the corporation in which they personally and actively participate. (Mem. Op. 8, Aug. 20, 2009, ECF No. 83). That is why, to the extent Mr. Hildebrandt fraudulently misrepresented that he would request and pay the remaining $146,679 balance of the $311,177.38 invoice on the first phase referenced in the lien waiver he would have been personally liable under Illinois law. But CMC presented no theory to connect the purported additional $65,293.90 owed for the second phase that was nowhere referenced in the lien waiver or contractor's affidavit. Nor has CMC suggested any other theory by which Mr. Hildebrandt would have been individually liable for that amount, other than the fact that CMC apparently obtained a default judgment against Mr.

Hildebrandt in state court.[5]

Yet, even assuming that Mr. Hildebrandt became personally liable for the $149,679 balance on the 'first phase' owing as of the time the lien waiver was delivered, he presented undisputed evidence that such amount was subsequently paid in full. CMC has admitted that sometime after March 2006, Mr. Hildebrandt individually paid CMC $80,000. This payment would have reduced Mr. Hildebrandt's liability to $69,679. CMC further admits that CMC was subsequently paid $89,500 by Quinn in settlement of a mechanics lien action CMC brought against Quinn on the amounts owing by HP. CMC admits that at least a portion of that settlement amount was applied to the 'first phase' invoices,[6] and has offered no reason why the payment should have been applied first against the $65,293.90 purportedly owed by HP alone on the 'second phase' as opposed to against the remaining $69,679 purportedly owed jointly by Mr. Hildebrandt and HP on the 'first phase.' Therefore, since Mr. Hildebrandt individually owed at most $149,679 for his purported fraud and CMC has admitted that it was subsequently paid $169,500 by Mr. Hildebrandt and from other sources in payment of that debt, CMC has failed to demonstrate that Mr. Hildebrandt currently owes it any money in respect of fraud.

---

[5] As discussed in cases such as In re Jacobs, 448 B.R. 453 (Bankr. N.D. Ill. 2011) (Sonderby, J.) and In re Nikitas, 326 B.R. 127 (Bankr. N.D. Ill. 2005) (Goldgar, J.), Illinois follows the majority view that a default judgment cannot usually form the basis for collateral estoppel or issue preclusion because the matter was not "actually litigated." Thus, while the default judgment would create a liability, the judgment would have no preclusive effect on the determination of whether that liability was dischargeable in bankruptcy.

[6] CMC admits that, after application of the $80,000 payments from Mr. Hildebrandt and the $89,500 settlement payment from Quinn, Mr. Hildebrandt owes CMC at most $42,472.98, and only seeks to find $41,050 non-dischargeable. (Pl.'s Post-Trial Brief ¶58 n.5, Oct. 20, 2011, ECF No. 148).

**B.     Fraud or Defalcation While Acting in a Fiduciary Capacity (Section 523(a)(4))**

Property owners usually will not disburse funds on a construction project until they receive lien waivers, but contractors often do not have enough funds to pay subcontractors until paid by the owner. Therefore, it "is not uncommon" in the construction industry "for a contractor or subcontractor to furnish a lien waiver swearing she has been paid even though, in fact, she has not been paid." Raymond Professional Group, Inc. v. William A. Pope Co., 2011 WL 528551 (N.D. Ill. 2011). To protect subcontractors in light of that industry practice, "the Illinois Mechanics Lien Act creates a trust when a contractor or subcontractor provides a lien waiver in exchange for payment or the promise of payment." Id. That statute provides that:

> Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, material, fixtures, apparatus or machinery, forms or form work for the improvement of a lot or a tract of land in exchange for payment or the promise of payment, shall hold in trust the sums received by such person as the result of the waiver of mechanics lien, as trustee for the person who furnished the labor, services, material, fixtures, apparatus or machinery, forms or form work or the person otherwise entitled to payment in exchange for such waiver.

770 ILCS 60/21.02(a). The statute further provides that:

> Any owner, contractor, subcontractor, or material supplier who knowingly retains or used the moneys held in trust under this Section or any part thereof, for any purpose other than to pay those for whom the moneys are held in trust, shall be liable to any person who successfully enforces his or her rights under this Section for all damages sustained by that person.

770 ILCS 60/21.02(c).

CMC argues that the Illinois Mechanics Lien Act made Mr. Hildebrandt a trustee and "fiduciary" of CMC with respect to the proceeds obtained from Quinn as a result of the lien waiver, and that Mr. Hildebrandt committed "defalcation while acting in a fiduciary capacity" when he failed

to turn those proceeds over to CMC. See 11 U.S.C. §523(a)(4). Defalcation is defined as a "failure to meet an obligation" or "a nonfraudulent default," and is "distinguished from fraud and embezzlement on the basis that subjective, deliberate wrongdoing is not required to establish defalcation, though some degree of fault is required." Follett Higher Educ. Grp., Inc. v. Berman (In re Berman), 629 F.3d 761, 765 n.3 (internal citations omitted). Defalcation "requires something more than negligence or mistake, but less than fraud." Id.

A key problem with CMC's argument is that CMC presented no evidence about what happened to the $41,050 proceeds of the check from Quinn after it was deposited into HP's bank account. Without giving any clue as to what happened to the funds, the Court has no way to determine whether the failure to pay CMC was "more than negligence or mistake." The funds could have been lost or stolen. They could have been garnished involuntarily by HP's other creditors, or the deposit bank could have set off all or a portion of the funds against fees or amounts owing by HP. In fact, the evidence presented did not even demonstrate as a certainty that Quinn's check actually cleared after it was deposited in HP's account. Also, even if HP voluntarily used the funds to pay others, the funds could have been used to pay other subcontractors or providers of material who had also submitted lien waivers at the same time as CMC, who would have equally been beneficiaries under the Illinois Mechanics Lien Act. Thus, CMC failed to prove any fault by Mr. Hildebrandt or HP.

Additionally, the statute makes the person who receives the sums a trustee, and CMC did not demonstrate that Mr. Hildebrandt, who was simply the vice president of HP and who had no ownership interest therein, 'received' the funds, as opposed to HP. No evidence was presented that

Mr. Hildebrandt himself received the check from Quinn, and it was undisputed that the check was deposited into an HP bank account, not a personal account of Mr. Hildebrandt. (Stipulations, Sept. 22, 2011, ECF No. 142). Although testimony showed that Mr. Hildebrandt had the power and authority to write checks on the HP account and had written them in the past, no evidence was presented that he actually wrote any checks using the proceeds from Quinn payment or otherwise directed the payment of those proceeds to anyone else.

Finally, even if CMC demonstrated that Mr. Hildebrandt individually held the $41,050 in trust for CMC and breached a fiduciary duty by using those funds for purposes other than paying CMC, CMC has admitted that Mr. Hildebrandt subsequently repaid CMC $80,000 out of his personal funds to repay the amounts owing by HP. This subsequent payment was nearly twice the size of the check from Quinn. Therefore, even if CMC had demonstrated that Mr. Hildebrandt was at one time individually liable for defalcation while acting in a fiduciary capacity, the evidence showed that any such debt was already repaid. CMC provided no argument as to why the $80,000 in subsequent payments should have been applied first to debts other than the purported defalcation debt, nor did it provide evidence to support any such argument.

## C. Counts IV and V (Constructive Trust)

In Counts IV and V, CMC alleges that Mr. Hildebrandt individually received and is currently holding all or a portion of the payment received from Quinn, and requests a determination that such funds are held in constructive trust for the benefit of CMC under the Illinois Mechanics Lien Act or Illinois common law and therefore are not part of Mr. Hildebrandt's bankruptcy estate. However,

CMC provided no evidence that Mr. Hildebrandt ever personally received any such funds from Quinn or that he currently holds any money or other assets that constitute proceeds of those funds. Therefore, judgment will be entered in favor of Mr. Hildebrandt on such counts.

### D.      Other Counts

Having found that CMC failed to meet its burden of demonstrating that any debt is non-dischargeable under Section 523, the remainder of its state law claims will be dismissed for want of subject matter jurisdiction. Mr. Hildebrandt received a discharge on June 9, 2008, the Chapter 7 Trustee filed a no-asset report on June 10, 2008, and the bankruptcy case was closed on June 12, 2008. Therefore, Mr. Hildebrandt's personal liability for the state law claims has been discharged and any assets that were in the bankruptcy estate have been abandoned to the Debtors by the Trustee under Section 554(c) by operation of the no-asset report and closure of the case. As such, the resolution of the discharged state law claims could have no foreseeable "effect on the estate of the debtor," and therefore the claims are not "related to" a case under Title 11, as would be required for this Court to maintain jurisdiction under 28 U.S.C. §1334(b). See In re Liburd-Chow, 434 B.R. 863, 867-68 (Bankr. N.D. Ill. 2010) (Schmetterer).

### E.      Other Procedural Matters

During the trial, the Court reserved ruling on two evidentiary objections. The first was the admissibility of Plaintiff's Exhibit 5, which was a copy of a fax from an employee at HP, Shari Evers, to Ann Doyle at CMC with the proposed unconditional lien waiver for CMC to sign stating that it had been paid in full. CMC sought to use this to show that Mr. Hildebrandt had asked CMC

to sign the unconditional waiver. Mr. Hildebrandt objected to the exhibit on hearsay grounds.[7] The second matter was the admissibility of Ms. Doyle's testimony that Ms. Evers told her that Mr. Hildebrandt had said that Quinn would not accept a conditional waiver, which Mr. Hildebrandt also objected to on hearsay grounds. The fax was not hearsay, because it was not being used to prove the truth of the matter asserted. Both parties already acknowledged that the contents of the proposed waiver were untrue, since CMC had not been paid. The testimony of Ms. Doyle *was* hearsay,[8] since it was being offered to prove that Mr. Hildebrandt had made the statement reported by Ms. Evers to Ms. Doyle, but would fall within the exception for party admissions, Fed. Rule. Evid. 801(d)(2)(D), since Ms. Evers was Mr. Hildebrandt's agent and the matter was within the scope of her employment. However, as is clear from the rest of this opinion, neither matter is relevant to this Court's ultimate ruling. Both matters related only to CMC's argument that Mr. Hildebrandt had falsely represented that Quinn would only accept an unconditional waiver. As noted above in footnote 4, however, the evidence demonstrates that any such representation was not false, and CMC appears to have dropped the argument.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter judgment in favor of the Defendant on Counts

---

[7] Mr. Hildebrandt had also initially objected on foundation grounds when CMC tried to admit the exhibit based solely on Mr. Hildebrandt's testimony, since it was not established that he had prepared, sent or even seen the fax before, but CMC later provided testimony from Ms. Doyle to authenticate the copy as the recipient of the fax.

[8] In contrast to both parties' assertions, it was not double-hearsay, since it was not being offered to prove the content of Mr. Hildebrandt's statement (that Quinn would not accept a conditional waiver), since CMC was trying to argue that statement was false.

IV, V and VII. The remaining Counts will be dismissed as moot or for want of subject matter jurisdiction.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: January 26, 2012

The Honorable Manuel Barbosa
United States Bankruptcy Judge